UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

ALBERTO RODRIGUEZ BENITEZ,        :

        Defendant-Movant,        :

    v.        :        No. 1:04-CV-627

UNITED STATES OF AMERICA,        :

        Respondent.        :

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO ALTER OR AMEND THE JUDGMENT

On March 28, 2005, the defendant, Alberto Rodriguez Benitez, filed a timely motion pursuant to Fed.R.Civ.P. 59(e) and Local R.Civ.P. 7.4 to alter or amend this Court's March 14, 2005, judgment denying the defendant's motion pursuant to 28 U.S.C. § 2255 to vacate his sentence. The defendant has asked this Court to withdraw its order dismissing the motion to vacate sentence and to enter instead an order directing the United States Attorney to file an answer to the motion or otherwise plead. To date, the Court has neither asked the government to file a response nor ruled on the motion. *See* Local R. 7.4(b). Since the motion is still pending, the movant files this supplemental memorandum to bring to the Court's attention a recent Supreme Court decision which bears on the motion.

In addition to the reasons provided in the defendant's previously-filed memorandum in support of his motion to alter or amend, this Court should reconsider its order dismissing the motion to vacate sentence, because the

Supreme Court's recent decision in *Dodd v. United States,* 545 U.S. –, 125 S.Ct. 2478 (June 20, 2005), supports the movant's argument that his *Blakely/Booker* claim was timely filed within one year of those decisions, even if not within one year of his conviction's becoming final.

This Court dismissed the movant's *Blakely/Booker* claim even though it was filed within one year of those decisions, because as of the date Mr. Benitez filed his motion to vacate, "neither decision has been retroactively applied to cases on collateral review."  Op. 3 (citing *Humphress v. United States,* 398 F.3d 855 (6th Cir. 2005), and cases from other circuits finding *Blakely* and *Booker* not to be retroactively applicable on collateral review).  This Court's ruling was implicitly grounded on *Pryor v. United States,* 278 F.3d 612, 616 (6th Cir. 2002), which held that the statute of limitations provided by 28 U.S.C. § 2255 ¶ 6(3) did not even begin to run until a new rule has already been held to be retroactively applicable on collateral review.[1]  Because the Supreme Court's decision in *Dodd* overruled *Pryor*, this Court should now reconsider its decision to dismiss the *Blakely/Booker* issue in light of *Dodd.*  The Supreme Court in *Dodd* held that 28 U.S.C. § 2255 ¶ 6(3):

---

[1] 28 U.S.C. § 2255 ¶ 6(3) provides for a new one-year statute of limitations beginning with:

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review ….

Of course, the issue under ¶ 6(3) is separate from and made in the alternative to movant Rodriguez-Benitez's request for a few days' equitable tolling of the one-year limitations period under ¶ 6(1).

> unequivocally identifies one, and only one, date from which the 1-
> year limitation period is measured:  "the date on which the right
> asserted was initially recognized by the Supreme Court."

125 S.Ct. at 2482.  Critical to a proper application of this provision is recognition that it refers to a "new right" and *not* to a "new rule," the term used in *Teague v. Lane,* 489 U.S. 288 (1989).

*Dodd* also held that even if a defendant files a motion within one year of the date on which the Supreme Court "initially recognize[s]" the "right" asserted, a defendant must also satisfy the second and separate requirement of the statute of limitations, to wit: that the "newly recognized" "right" must have been "made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255 ¶ 6(3); 125 S.Ct. at 2482.  The Supreme Court did not decide how this second require-ment might be satisfied, because the facts of that case did not require it to do so. (In *Dodd,* under the Supreme Court's authoritative interpretation of the filing deadline, the § 2255 motion was filed too late, making the retroactivity require-ment moot.)  Binding Circuit precedent, however, holds that the district court in which a § 2255 motion has been filed can and should make the initial decision as to whether a right newly recognized by the Supreme Court is retroactively appli-cable on collateral review, thus fulfilling the second prong of 28 U.S.C. § 2255 ¶ 6(3).  See *Wiegand v. United States,* 380 F.3d 890 (6th Cir. 2004).  This Court should now rule that the "right" which was "newly recognized" by the Supreme Court in *Booker* is retroactively applicable on collateral review in this case.

Although the Court of Appeals held that *Booker* was not retroactively appli-cable under the particular facts in *Humphress,* different facts in Mr. Benitez's

case call for a different result.  The Court of Appeals premised its non-retroac-tivity ruling in *Humphress* on two factors: the nature of the "right asserted" and the date that the defendant's conviction became final.  First, the "right asserted" in *Humphress* was the defendant's right (as recognized in *Blakely v. Washington,* 542 U.S. 296 (2004), according to petitioner Humphress) to have the jury, rather than the judge, decide facts which increased his offense level under the manda-tory guideline sentencing regime that existed prior to *Booker.*  Second, the judg-ment of conviction in *Humpress* became final in January 2000, 398 F.3d at 860, at least five months *before* the Supreme Court decided *Apprendi.*  Therefore, when the Court of Appeals ruled that *Booker* "was not dictated by precedent existing at the time that Humphress's conviction became final," 398 F.3d at 861, it necessarily did not *decide* whether the Constitutional *rule* applied in *Booker* was dictated by *Apprendi* or *any* of its progeny.[2]  Both because this case involves a different right – one that was initially recognized by the Supreme Court in *Booker* – and because Mr. Benitez's conviction became final *after* the Supreme Court's ruling in *Ring v. Arizona,* 536 U.S. 584 (2002), *Humphress* does not control this case.

After *Booker,* it is clear that Mr. Benitez's Fifth Amendment Due Process rights were violated when this Court failed to follow the requirements of 18 U.S.C. § 3553(a), without the unconstitutional restriction imposed by 18 U.S.C.

---

[2] Although the Court also discussed whether *Booker* was dictated by *Blakely, see* 398 F.3d at 861, that discussion was not necessary to the Court's decision, and is therefore dictum that is not binding on this Court.

§ 3553(b)(1).  This right, which Mr. Benitez now asserts,[3] was initially recognized by the Supreme Court on January 12, 2005, when it announced its decision in *Booker*.

A defendant's *right* to be sentenced in accordance with the requirements of 18 U.S.C. § 3553(a) without the unconstitutional impediment of § 3553(b)(1) was the remedy the Supreme Court devised to avoid having to invalidate the Sentencing Reform Act and Guidelines on account of a violation of a Constitutional rule that was clear following the Supreme Court's decision in *Ring v. Arizona*. Because the Constitutional *rule* the Supreme Court applied in *Booker* was dictated by precedent in effect when Mr. Benitez's conviction became final, the new *right* it initially recognized in *Booker* is retroactively applicable in this case.[4]

A case announces a new constitutional rule under *Teague* only if the court bases its decision in the Constitution and the rule was not dictated or compelled

---

[3] Although the movant did not raise this precise issue in the § 2255 motion he filed in September 2004, several months *before* the Supreme Court decided *Booker,* he asks that this Court to decide the motion to alter or amend under the presumption that he has amended his motion to vacate to include this *Booker* claim.  See *Mayle v. Felix,* 545 U.S. –, 125 S.Ct. –, 2005 WL 1469153 (June 23, 2005) (discussing right to amend habeas petition once as a matter of course before responsive pleading is filed).

[4] The "new right" is also retroactively applicable even if  the Constitutional *rule* recognized by *Booker* was not dictated by precedent in effect when Mr. Benitez's conviction became final.  The Supreme Court invalidated the mandatory aspect of the guidelines in *Booker* for one reason – to bring to the sentencing process the fundamental fairness and accuracy demanded by the Fifth and Sixth Amendments.  When the guidelines were mandatory, *judges* made decisions that affected the "statutory maximum" sentence using a preponderance of the evidence standard, even though the Constitution demanded *proof beyond a reasonable doubt* in such a mandatory system.  Since courts made such decisions using a less fair and accurate standard of proof, the rule in *Booker* was necessary to the fundamental fairness of the sentencing phase of the criminal proceeding and improves the accuracy of the criminal process.  *See United States v. Siegelbaum,* 359 F.Supp.2d 1104, 1106-07 (D. Or. 2005) (stating that at least in some cases, *Booker* may be retroactive on collateral attack).  For this reason, the new rule announced in *Blakely/Booker* is retroactively applicable under the second *Teague* exception.  Although the movant recognizes that this Court is bound by the Court of Appeals' contrary decision in *Humphress,* he raises it to preserve it for possible *en banc* review or certiorari.

by precedent.  *Beard v. Banks*, 542 U.S. 406, 124 S. Ct. 2504, 2511-13 (2004).  A decision "dictated by precedent" is, by definition, not "new."  As Justice Scalia made clear in *Blakely,* the decision in that case, and by extension the decision in *Booker,* was dictated by precedent:  "Our precedents make clear, however, that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence that a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  *Blakely*, 124 S. Ct. at 2537.

Even if this Court were to conclude that the Constitutional ruling in *Booker* was not dictated by *Apprendi,* it was certainly dictated by *Ring v. Arizona*, 536 U.S. 584 (2002).  *Ring* overruled *Walton v. Arizona*, 497 U.S. 639 (1990), a case which had previously upheld the constitutionality of an Arizona death penalty statute which modeled guideline sentencing in all pertinent respects for purposes of the analysis in this case.  Under the Arizona scheme, the death penalty could be imposed following a capital murder conviction *only* if the sentencing judge found certain aggravating facts.  Although *Apprendi* found *Walton* to withstand scrutiny, 530 U.S. at 496-97, the Court in *Ring* conceded that its prior analysis of *Walton* was flawed.  *Ring*, 122 S.Ct. at 2440.  Although the Arizona capital murder statute provides for an outer maximum sentence of death, that sentence could not be imposed based simply on factual findings supporting the jury's verdict.  Under Arizona law, before a sentence of death could be imposed, the sentencing judge was required by statute to find certain *additional* aggravating facts.  122 S.Ct. at 2437.  The *Apprendi* Court had approved its prior ruling in *Walton*, because it was under the false impression that the death penalty was a

possible punishment based solely on facts found by the jury.  122 S.Ct. at 2436 (citing *Apprendi*, 530 U.S. at 496-97).  Since that was actually not the case, the Court overruled *Walton*.  122 S.Ct. at 2443.

Guidelines sentencing is structurally similar to the Arizona death penalty statute found unconstitutional in *Ring*.  As with capital murder in Arizona, prior to *Booker,* federal criminal offenses were subject to a two-tier maximum penalty structure.  Just as a court in Arizona could not impose the death penalty (the outer maximum penalty provided by the statute of conviction) without finding facts not necessarily found by the jury, prior to the right newly recognized by the Supreme Court in *Booker,* this Court was not legally authorized to impose the "statutory maximum" sentence absent proof of facts not found by the jury or admitted by the defendant.  For the same reason that Arizona's death penalty statute, properly understood, could not withstand *Apprendi,* the mandatory sentencing guideline regime could not withstand *Ring.*  Because the Supreme Court's Constitutional ruling in *Booker* was dictated by *Ring, Booker* announced no "new rule" with respect to the movant in this case.  Because the "right" "initially recognized by the Supreme Court" in *Booker* was premised on a Constitutional "rule" that was dictated by precedent in effect when Mr. Benitez's judgment became final, that "newly recognized" "right" is retroactively applicable in this case, thus meeting the second requirement in § 2255 ¶6(3).

Because Mr. Benitez filed his § 2255 motion within one year of the date the Supreme Court initially recognized his right to be sentenced in accordance with 18 U.S.C. § 3553(a) without the unconstitutional impediment of *id.* § 3553(b)(1),

his *Blakely/Booker* issues are timely filed, even if the Court does not apply equitable tolling.

CONCLUSION

For these reasons, the reasons previously argued, and for any other reasons which may occur to this Court, this Court should reconsider its dismissal of the defendant's Motion to Vacate Sentence.  On reconsideration, the Court should withdraw its order dismissing the motion to vacate and order the United States Attorney to answer the defendant's Motion to Vacate Sentence, or otherwise plead.  After the government files its answer and the movant replies, the Court should set a date for an evidentiary hearing, and after that hearing, grant the motion and resentence Mr. Benitez.

Should the Court deny the movant's motion to alter or amend the judgment, it should, at minimum, grant a certificate of appealability with respect to the following issues:  (1) whether this Court erred when it dismissed the motion to vacate without first ordering the United States Attorney to file an answer or otherwise plead; (2) whether this Court erred when it dismissed the motion to vacate as untimely without giving the movant an opportunity to demonstrate equitable tolling; (3) whether it "plainly appears" from the motion and prior proceedings that the movant is entitled to no relief; and (4) whether the files and the records of the case "conclusively show" that the movant is entitled to no relief, to wit, whether the files and records conclusively show that Mr. Benitez had counsel at every critical phase of the sentencing hearing,  whether they conclusively show that he received effective assistance of counsel during those

portions of the sentencing hearing at he was represented by counsel, whether

they conclusively show that this Court did not sentence him under a misap-

prehension of law, whether they conclusively show that he was not sentenced in

violation of his Fifth and Sixth Amendment rights as explicated in *Blakely*, and

whether they conclusively show that his sentencing counsel protected his appel-

late rights.

Dated:  July 12, 2005                          Respectfully submitted,
                                               LAW OFFICES OF ALAN ELLIS

<u>Local Counsel</u>:

                               By:   <u>*s/ James H. Feldman, Jr.*</u>
TONYA L. KRAUSE-PHELAN                JAMES H. FELDMAN, JR.
   Bar No. P42056                       (Pennsylvania Bar No. 36345)
96 Monroe Center, NW                 50 Rittenhouse Place
Grand Rapids, MI  49503              Ardmore, PA  19003-2276

   (616) 458-2000                       (610) 658-2255

<u>Attorneys for the Defendant-Movant</u>

-9-

<u>Certificate of Service</u>

I certify that on July 12, 2005, I served a copy of the foregoing

supplemental accompanying memorandum on counsel for the government by

mailing a copy of it by First Class Mail, postage prepaid, addressed as follows:

> B. Rene Shekmer , Esq.
> Assistant U.S. Attorney
> The Law Bldg.
> 330 Ionia Ave., NW
> P.O. Box 208
> Grand Rapids, MI 49501-0208

<u>*s/James H. Feldman, Jr.*</u>
James H. Feldman, Jr.
